UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **VIRGIL GAMBLE** </br></br> Plaintiff, </br></br> v. </br></br> **JP MORGAN CHASE & COMPANY and J.P. MORGAN SECURITIES LLC,** </br></br> Defendants | Case No._____ </br> Judge </br></br> **JURY DEMAND** |

## COMPLAINT

Comes now Plaintiff, **VIRGIL GAMBLE** (hereafter "Plaintiff" or "Mr. Gamble"), by and through counsel, and respectfully submits his Complaint against Defendant, **JP MORGAN CHASE & COMPANY**, (hereafter "Defendant" or "JP Morgan"); for violations of the Age Discrimination Employment Act and Americans with Disability Act. In support thereof he alleges as follows:

### PARTIES

1. Plaintiff, Virgil Gamble, is a resident of Davidson County, Tennessee.

2. Defendant JP Morgan Chase & Co. is a for-profit corporation incorporated in Delaware. Its principal office is located at 270 Park Avenue, New York, NY 10017. It can be served through its registered agent, the Corporation Trust Co., Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. Defendant is registered to do business in Tennessee and California through its subsidiary, Defendant J.P. Morgan Securities LLC. Defendant J.P. Morgan Securities LLC's principal office is at 383 Madison Avenue, New York, NY

1

10179 and can be served in Tennessee through its registered agent, C T Corporation System, 800 South Gay Street, Suite 2021, Knoxville, TN 37929.

3. Defendants employ currently, and did employ at the time this action accrued, more than 500 employees.

## JURISDICTION AND VENUE

4. This action is brought under the ADEA, 29 U.S.C. Section 621 *et seq.*, and ADA, 42 U.S.C. Section 12101 *et seq.*, as amended.

5. This court has jurisdiction under 28 U.S.C. 1331 to hear Plaintiff's claims arising under the Constitution and laws of the United States.

6. This Court has jurisdiction under 28 U.S.C. 1343(4) to hear Plaintiff's claims to recover damages and to secure equitable relief under any Act of Congress providing for the protection of civil rights.

7. Plaintiff filed a charge of discrimination with the EEOC and received a Right to Sue letter, and has met all conditions precedent to bringing this action.

8. Venue is appropriate in the Middle District of Tennessee under 28 U.S.C. 1391(b)(1) as both defendants do business in this judicial district.

## GENERAL FACTUAL ALLEGATIONS

9. Plaintiff began his employment with JP Morgan Chase on or around June 2008 when they acquired his former employer, Bear Stearns and Company. JP Morgan Chase gave Plaintiff a six-year employment contract.

10. Between December 2009 and July 2011, Mr. Gamble was involved in four different automobile accidents. The injuries from these accidents required multiple surgeries to

Plaintiffs (1) right foot, (2) right knee, (3) a partial knee replacement, (4) right shoulder, (5) and multiple injections into all affected joints, including his right hip.

11. Mr. Gamble had to take time off of work for surgeries, hospitalizations, physical therapy and recovery during this time. After returning to work, he could work only part time due to still being in poor health and recuperating.

12. On or about July 2011, David Jernigan ("Jernigan") was hired as a new branch manager of the JPMorgan Securities San Francisco where Mr. Gamble was employed.

13. On or around August 12, 2011, Jernigan called Mr. Gamble into his office and informed him that he needed to raise more client assets despite Mr. Gamble's known physical limitations at the time.

14. Although Mr. Gamble had no negative internal reviews, no regulatory complaints, no customer complaints, nor poor performance records; Jernigan asked that he resign his employment. Mr. Gamble refused but Jernigan encouraged him to "give further consideration to resigning."

15. At the time, Mr. Gamble was using crutches and a knee scooter to walk and be able to move around at work. Jernigan made several derogatory and humiliating comments about his condition, especially jokes about his knee scooter, in the presence of others. This was all very embarrassing to Plaintiff.

16. Over the next several months, approximately four older brokers were forced to resign by Jernigan.

17. On or around August 15, 2011, Mr. Gamble had emergency heart surgery as a result of stress in the workplace. Mr. Gamble informed Jernigan of his hospitalization and surgery.

3

Case 3:15-cv-00496   Document 1   Filed 04/28/15   Page 3 of 8 PageID #: 3

18. Mr. Gamble's cardiologist advised him not to return to work and sent a letter to Defendant advising the same.

19. Defendant approved Mr. Gamble's short term disability request, which included 100% of his salary for four months and 60% for two months; however, this calculation was incorrect due to the disparity between his "salary" (Mr. Gamble was never aware of having a salary at JP Morgan) and "pay" (based off of commission for the month) as defined by the JP Morgan Disability Policy. Mr. Gamble disputed this calculation to Jennifer Smith, in JP Morgan's Human Resources Department. The discrepancy was not remedied.

20. In or around September 2011, while on medical leave after heart surgery, Jernigan reassigned all of Plaintiff's clients to another broker which effectively ended his business because he would not have a client base upon returning to work.

21. Jernigan informed Mr. Gamble that he would receive 50% of all commission generated by his accounts taken over by another broker, however Mr. Gamble never agreed to this arrangement and was never given the opportunity to sell his client base to other brokers. Nevertheless, the 50% commission payments ended in or around May of 2012 instead of September 2012, which would have been one year after he was promised this arrangement.

22. In or around October 2011, Mr. Gamble communicated with Fran Allen, Executive Deferred Compensation Department, requesting his deferred compensation. He was informed that he could not withdraw any deferred compensation until leaving the company or retirement. At that time Mr. Gamble was also informed that his employment would be terminated on August 15, 2013.

23. On or around October 19, 2011, Mr. Gamble reported to Linda McKee in Employee Relations, that he felt he was being discriminated against because of his age and disability. No investigation ensued as a result of this complaint.

24. On or around May 30, 2012, Mr. Gamble was informed by Defendant that his retention loan payment was past due; however, it was supposed to be forgiven in the event of his disability or death.

25. On or around June 2012, Mr. Gamble did not receive his retention bonus.

26. In or around December 2012, Defendant terminated Plaintiff's employment while he was disabled and on long-term disability leave. Mr. Gamble was 69 years old at the time of his termination.

27. On or around October 1, 2013, Defendant retired Mr. Gamble without any prior notification or agreement from him.

## COUNT ONE

### Violations of the Age Discrimination in Employment Act

28. Plaintiff incorporates by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

29. The conduct described herein constitutes unlawful discriminatory practices on the part of Defendant in violation of the Age Discrimination in Employment Act.

30. Defendant is an employer as defined by the ADEA.

31. Defendant did segregate or classify Plaintiff based upon his age in a way that would deprive him of employment opportunities or otherwise adversely affect his status as an employee.

5

32. Defendant's termination of Plaintiff and treating him less favorably than his younger counterparts resulted from a knowing and intentional pattern of discrimination in violation of the ADEA.

33. As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff has suffered and continues to suffer distress, humiliation, embarrassment, emotional pain and other damages.

## COUNT TWO

### Violations of the Americans with Disabilities Act

34. Plaintiff incorporates by reference, as if fully set forth herein, all preceding paragraphs of this Complaint.

35. Defendant is an employer within the meaning of the ADA, and as amended.

36. Plaintiff is a qualified individual with a disability, or was perceived by his employee to have the same. Plaintiff is an individual with a disability who, with or without reasonable accommodation, could have performed the essential functions of his position with Defendant employer.

37. The conduct described herein constitutes unlawful discriminatory practices on the part of Defendant in violation of the ADA, and as amended, which provides for the recovery of compensatory and punitive damages in cases of intentional violations of the ADA, as amended.

38. Plaintiff's disabilities substantially limited his ability to perform his job compared to other employees having comparable training, skills and abilities.

39. Defendant's employees were aware of Plaintiff's disabilities and Plaintiff was regarded as having said disabilities by his employer.

40. By terminating Plaintiff's employment, Defendant did segregate or classify Plaintiff based upon his disability, or a perceived disability, in a way that denied employment opportunities to Plaintiff who is otherwise a qualified individual with a disability.

41. Defendant's decision to terminate Plaintiff and treat him less favorably than his non-disabled counterparts resulted from a knowing and intentional pattern of discrimination in violation of the ADAAA.

42. As a direct and proximate result of Defendant's violation of the ADAAA, Plaintiff has suffered and continues to suffer distress, humiliation, embarrassment, emotional pain and other damages.

**WHEREFORE,** Plaintiff prays:

1. For a jury to be empaneled and a judgment of compensatory damages to include front pay, back pay and emotional suffering; including, but not limited to (1) the full business valuation of Plaintiff's annual revenue production, (2) contractual bonus payments, and (3) JPMC restricted stock shares;

2. Punitive damages;

3. Attorney's fees and the cost of litigation to include expert fees;

4. All other remedies and injunctions as are necessary and proper to eliminate the discriminatory practices of Defendant;

5. A judgment against Defendant for prejudgment interest; and

6. Such other relief as this Court deems proper.

Respectfully Submitted;

**ANDY L. ALLMAN & ASSOCIATES**

_____
Andy L. Allman, BPR No. 17857
Allison S. Porter, BPR No. 31766
131 Saundersville Road, Suite 110
Hendersonville, TN 37075
Phone: (615) 933-0110
Fax: (615) 265-8766
andy@andylallman.com
allison@andylallman.com