**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: May 9, 2017

Mr. Robert Patrick Parker
Parker & Associates
1517 Hunt Club Boulevard
Hendersonville, TN 37066

Mr. Jonathan O. Harris
Ogletree Deakins
401 Commerce Street
Suite 1200
Nashville, TN 37219

Re:  Case No. 16-6488, *Virgil Gamble v. JP Morgan Chase & Company, et al*
Originating Case No. : 3:15-cv-00496

Dear Counsel:

The Court issued the enclosed Opinion today in this case.

Sincerely yours,

s/Renee M. Jefferies
Case Manager
Direct Dial No. 513-564-7021

cc:  Mr. Keith Throckmorton

Enclosure

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name:  17a0267n.06

Case No. 16-6488

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| VIRGIL GAMBLE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JP MORGAN CHASE & COMPANY and J.P. | ) | COURT FOR THE MIDDLE |
| MORGAN SECURITIES, LLC, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendants-Appellees. | ) | |

```
┌─────────────────────────────┐
│           FILED             │
│       May 09, 2017          │
│   DEBORAH S. HUNT, Clerk    │
└─────────────────────────────┘
```

_____

OPINION

**Before:  MERRITT, GILMAN, and DONALD, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.**   Virgil Gamble brought suit against JP Morgan Chase & Company (JP Morgan Chase) and J.P. Morgan Securities, LLC (JPMS) (collectively, JP Morgan) for employment discrimination.  He alleged that, after suffering a series of heart attacks that left him disabled, JP Morgan failed to accommodate his disability and then terminated him from his position as a stockbroker, all in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* Gamble also claimed that his termination violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* The United States District Court for the Middle District of Tennessee granted JP Morgan's motion for summary judgment on both of Gamble's claims.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

No. 16-6488, *Gamble v. JP Morgan et al.*

# I.  BACKGROUND

### A.     Factual background

Gamble was employed by JP Morgan Chase Bank, N.A., (the Bank) as a Financial Advisor in San Francisco, California.  Although he had worked in the financial industry since 1980, his employment with the Bank did not begin until 2008, after the Bank acquired Bear Stearns during the major economic downturn at that time.  Gamble worked as a self-described stockbroker, and his job duties included managing client assets, providing investment advice, maintaining client development, and growing his book of business.  As the district court noted, Gamble alleged at different times throughout this litigation that he was employed as a stockbroker by JP Morgan Chase, JPMS, and the Bank.  He conceded for the purpose of JP Morgan's summary-judgment motion, however, that he was actually employed only by the Bank.  Nonetheless, neither JP Morgan Chase nor JPMS object on the ground that Gamble was never their employee, and the relationship between the three JP Morgan entities is not explained in the briefs.

While Gamble was working for the Bank, he was involved in four separate automobile accidents between December 2009 and July 2011.  These accidents left Gamble with injuries to his back and to the right side of his body, including his foot, knee, hip, shoulder, and neck.  As a result of these injuries, Gamble was able to work only part time at the Bank, and was unable to develop his business or to increase the client assets that he managed.

Gamble alleges that, while he was recovering from these injuries, branch manager David Jernigan mocked Gamble's use of a knee scooter.  Jernigan also told Gamble in early August 2011 that Gamble needed to increase his book of business.  When Gamble informed Jernigan

2

No. 16-6488, *Gamble v. JP Morgan et al.*

that he was unable to do so because he could not work full-time, Jernigan asked Gamble to resign.  Gamble declined Jernigan's request.

On August 12, 2011, just a few days after the above conversation, Gamble experienced a cardiac event and underwent an emergency angioplasty to insert a stent in his heart.  This episode was Gamble's third cardiac event, with Gamble having suffered two previous heart attacks in 1989 and 2006.  On August 24, 2011, Gamble's cardiologist, Dr. Raymond Erny, sent a letter to JP Morgan regarding Gamble's cardiac condition.  Dr. Erny stated that Gamble's "combination of coronary heart disease and left ventricular dysfunction are causing a variety of symptoms which impairs his ability to work," and that he had advised Gamble "not to return to his position with J.P. Morgan Securities, and to . . . take a disability leave given his current cardiac condition."  On August 29, 2011, Gamble provided JP Morgan with an additional certification from Dr. Erny, stating that Gamble would be physically unable to work from August 15, 2011 until February 15, 2012.

Under JP Morgan's short-term disability plan, Gamble was entitled to six months of disability leave.  JP Morgan's Disability Management Services initially approved Gamble's leave for the period of August 12, 2011 through November 7, 2011.  This leave was thereafter extended until February 13, 2012, at which time Gamble exhausted his leave under JP Morgan's short-term disability plan.  But Gamble had also earned disability benefits through the California State Disability Insurance fund for a period of twelve months, which ran concurrently with his short-term disability benefits.  Finally, Gamble had purchased a long-term disability policy from The Prudential Insurance Company of America (Prudential).  Gamble therefore applied for long-term disability benefits through Prudential in January 2012.  Prudential approved Gamble's

3

No. 16-6488, *Gamble v. JP Morgan et al.*

claim, and he was given long-term disability benefits from February 13, 2012 through May 12, 2013.

Despite the fact that he was on leave, Gamble was required to be licensed to sell securities through the Financial Industry Regulatory Authority (FINRA) because he was registered as a Financial Advisor. JPMS ensures that its employees are in compliance with applicable securities and FINRA regulations, including continuing-education requirements. If a securities professional does not maintain these continuing-education requirements, JPMS is required to file with FINRA a Form U5 to terminate that professional's securities license.

Deborah Barragan, the Vice President of the Compliance Department for JPMS, learned in December 2012 that Gamble had not completed the mandatory continuing-education requirements in order to maintain his securities license. Rather than inform Gamble that he needed to complete these requirements, Barragan instead filed a Form U5 with FINRA to terminate Gamble's securities license with JPMS on December 19, 2012. The reason stated on the Form U5 for the termination of Gamble's securities license was his leave of absence.

Barragan subsequently sent Gamble a letter with a copy of the Form U5 that she had filed with FINRA on his behalf. Gamble interpreted the termination of his securities license as effectively terminating his employment with JP Morgan. JP Morgan points out, however, that Barragan had no authority to terminate Gamble's employment and that Gamble could have completed his continuing-education requirements and applied within two years after he was placed on U5 status to have his license reinstated. But Gamble never completed these requirements or applied to reinstate his license. He instead relocated to Nashville, Tennessee in May 2012.

4

No. 16-6488, *Gamble v. JP Morgan et al.*

Gamble maintains that his attorney then sent letters to Jeanne Austria, JP Morgan Chase's Assistant Vice President of Human Resources, requesting accommodations for his disability. These letters are unauthenticated, and were introduced by Gamble for the first time in response to JP Morgan's motion for summary judgment. The first letter, purportedly sent in March 2013, states that Gamble's condition did not prevent him from returning to work, but that he might require certain accommodations under the ADA. The letter continues: "We are therefor [sic] making a formal request that you engage in the interactive process to assess what reasonable accommodations can be made for Mr. Gamble's return to work." After receiving no response from JP Morgan, Gamble's lawyer allegedly wrote a follow-up letter in June 2013, asking Austria to contact him and notifying her that he would be pursuing legal remedies if Austria did not contact him within 30 days. Gamble's attorney never received a response from Austria.

On August 14, 2013, the Bank's Vice President and Human Resources Business Partner Jennifer Smith sent a letter to Gamble regarding his leave status and his intentions to return to work. The letter stated in pertinent part as follows:

> Our records indicate that your long-term disability benefits ended on May 14, 2013. You are currently out on an unapproved leave. Since we have not heard from you, we assume that you do not intend to return to work. If this understanding is not correct, please contact me immediately . . . and we can discuss your options. If I do not hear from you by August 27, 2013 we will process the termination of your employment effective August 28, 2013.

When Smith did not receive a response from Gamble, she attempted to contact him over the phone and eventually sent him a "Final Letter" on September 4, 2013, which read:

> I have sent you a letter dated August 14, 2013 to discuss the expiration of your long-term disability benefits on May 14, 2013. You have been on an unapproved leave and we have not heard from you. Per the letter, if we did not hear back from you by August 27, 2013 we would terminate your employment effective August 28, 2013. I also tried to reach you several times via

No. 16-6488, *Gamble v. JP Morgan et al.*

> telephone and most recently today. I have not received a call back
> from you. If I do not hear from you by Friday, September 6th[,]
> I will assume that you do not intend to return to work and we will
> process the termination of your employment effective Monday,
> September 9th.

Gamble did not respond to Smith's phone calls or letters.  Gamble, however, stated that he never received any phone calls from Smith nor did he receive either of the two letters referred to above.  Although Gamble maintains the belief that he was effectively terminated in December 2012, he admits that the Bank actually terminated his employment on September 9, 2013

**B.    Procedural background**

Gamble filed suit against JP Morgan in April 2015.  He alleged multiple violations of the ADA and the ADEA stemming from his termination and from various other events, such as the improper calculation and termination of his disability benefits.  JP Morgan moved for summary judgment on all of Gamble's claims, which the district court granted in August 2016.  Gamble has timely appealed.  He challenges the court's grant of summary judgment to JP Morgan only on Gamble's claims that: (1) his termination constituted disability discrimination in violation of the ADA, (2) he was denied a reasonable accommodation in violation of the ADA, and (3) his termination constituted age discrimination in violation of the ADEA.

## II. ANALYSIS

**A.    Standard of review**

We review de novo the district court's grant of summary judgment.  *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 301 (6th Cir. 2016).  Summary judgment is appropriate when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

6

No. 16-6488, *Gamble v. JP Morgan et al.*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In making this assessment, we must view all evidence in the light most favorable to the nonmoving party."  *Tennial*, 840 F.3d at 301.

**B.      Gamble's ADA claims**

Gamble first argues that the district court erred in granting summary judgment to JP Morgan on his ADA claims.  He contends that JP Morgan violated the ADA both in terminating his employment and in failing to accommodate his disability.  Indeed, the ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."    42 U.S.C.  §  12112(a).    Discrimination  under  the  ADA  also  includes  an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A). We agree with the district court's conclusions, however, that Gamble failed to establish a prima facie case of his discrimination and failure-to-accommodate claims.

### *1.  Gamble's discrimination claim*

Because Gamble did not present any direct evidence of discrimination, his first claim under the ADA is evaluated using the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011).  Gamble must first establish a prima facie case of employment discrimination under this framework.  If he can establish such a prima facie case, then "the burden shifts to the defendant to articulate a non-discriminatory explanation for the employment action, and if the defendant

7

No. 16-6488, *Gamble v. JP Morgan et al.*

does so, the burden shifts back to the plaintiff to prove that the defendant's explanation is pretextual." *See id.* The district court did not reach JP Morgan's articulation of its legitimate, non-discriminatory reasons for terminating Gamble's employment because it found that Gamble had not met his burden to establish a prima facie case of disability discrimination.

To establish a prima facie case of disability discrimination under the ADA, "a plaintiff must show that 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Id.* (internal quotation marks omitted) (quoting *Macy v. Hopkins Cty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007). The district court held that Gamble failed to establish that he was "otherwise qualified for the position," as required by the second prong of the prima facie test.

The term "qualified individual" is defined by the ADA as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Gamble argues that he is a qualified individual because he could perform other jobs in the securities industry, such as being an expert witness, if he had been granted reasonable accommodations. But the overwhelming evidence demonstrates that Gamble was not a qualified individual for the purpose of the ADA because he could not perform the essential functions of his job as a stockbroker.

Regular attendance was an essential function of Gamble's position at JP Morgan. *See Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 392–93 (6th Cir. 2017) (holding that an employee could not perform the essential function of regularly attending her job when she was absent for "entire months in 2013 and 2014"); *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 761

8

No. 16-6488, *Gamble v. JP Morgan et al.*

(6th Cir. 2015) (en banc) ("That general rule—that regularly attending work on-site is essential to most jobs, especially the interactive ones—aligns with the text of the ADA.").  And our caselaw further establishes that an employee who has not been medically released to return to work, and therefore cannot perform the essential function of regularly attending his or her job, is not a qualified individual for purposes of the ADA.  *See Anderson v. Inland Paperboard & Packaging, Inc.*, 11 F. App'x 432, 438 (6th Cir. 2001) (holding that an employee failed to establish the second prong of a prima facie case under the ADA because her doctor "had not yet given her permission to return to work when her employment . . . was terminated); *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (holding that an employee had "not met the second requirement that she be qualified to perform the essential functions of the job" where she was not released by her doctor to return to work, failed to come to work for an entire year, and "gave no indication as to when she would be able to return to work").

The record in this case is replete with evidence showing that Gamble was unable to return to work throughout his disability leave, at the time that he was terminated, or during the pendency of this litigation.  He has further admitted to being completely disabled, unreleased to work by his doctor, and unable to regularly attend his job.  Indeed, the evidence suggests that Gamble had no intention of returning to work at JP Morgan when his long-term disability leave ended.  The district court summarized this evidence at length, and we briefly note below some of the evidence most fatal to Gamble's claim that he was a qualified individual under the ADA:

- Dr. Erny's August 24, 2011 letter stating that he had advised Gamble "not to return to his position with J.P. Morgan Securities, and to . . . take a disability leave given his current cardiac condition;"

9

No. 16-6488, *Gamble v. JP Morgan et al.*

- Gamble's January 2016 deposition testimony that he had decided, during his sixth-month short-term disability leave, that it was in his best interest not to be a stockbroker again;

- Gamble's April 2012 deposition testimony, taken as part of a California lawsuit that he had brought in connection with his automobile accident, in which he admitted that he was "totally disabled" and that his cardiac condition would permanently disable him from working;

- Gamble's sworn affidavits submitted in connection with the California lawsuit, stating that he suffers "constant pain" from his injuries, that this pain prohibits him from exercising and therefore has a "deleterious effect" on his heart condition, and that his disabilities rendered him "incapable of working for another 20 years;"

- Gamble's deposition testimony in this case stating that he was physically unable to work as of August 2013 and that he continued to be disabled and unable to work at the time of the deposition in January 2016.

The record evidence therefore establishes that Gamble was not a qualified individual for the purpose of the ADA. Because Gamble was not released to work by his doctor and remained completely disabled at the time of his termination, he was unable to perform the essential function of regularly attending his job. He has therefore failed to establish the second prong of his prima facie case for discrimination under the ADA—that he be "otherwise qualified for the

10

No. 16-6488, *Gamble v. JP Morgan et al.*

position, with or without reasonable accommodation." *See Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (quoting *Macy v. Hopkins Cty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007). The district court therefore did not err in granting summary judgment to JP Morgan on Gamble's claim that his termination constituted disability discrimination in violation of the ADA.

### 2. *Gamble's failure-to-accommodate claim*

Gamble also claims that JP Morgan violated the ADA when it failed to accommodate his disability. True enough, the "failure to provide a reasonable accommodation to a disabled, but otherwise qualified, person in the workplace is deemed unlawful discrimination under the ADA." *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017). But Gamble bears the burden of establishing as part of his prima facie case "that (1) [he] is disabled; and (2) [he] is 'otherwise qualified for the position despite' [his] disability, either with or without a reasonable accommodation." *See id.* (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007)). Because Gamble has failed to show that he was "otherwise qualified for the position," he has failed to establish a prima facie case of employment discrimination based on JP Morgan's alleged failure to accommodate his disability.

The only accommodation proposed by Gamble that would address his disability was a transfer to another position within JP Morgan as an expert witness. Although a "'reasonable accommodation' under the ADA may include 'reassignment to a vacant position,'" *Kleiber*, 485 F.3d at 869 (quoting 42 U.S.C. § 12111(9)(B)), Gamble has failed to show that his request for such a transfer was reasonable under the circumstances. To overcome summary judgment, Gamble "generally must identify the specific job he seeks and demonstrate that he is qualified

11

No. 16-6488, *Gamble v. JP Morgan et al.*

for that position." *See id.* at 870. But Gamble conceded that he is unaware if such a position is available at JP Morgan and that he has never served as an expert witness before.

Gamble argues on appeal, however, that he was unable to propose a reasonable accommodation and establish a prima facie case because JP Morgan failed to engage in the "interactive process" of identifying potential reasonable accommodations for him. But "an employer's failure to engage in the interactive process is actionable only if the employee can demonstrate that she was qualified for the position." *Williams*, 847 F.3d at 395. Gamble, moreover, was saddled with "the initial burden of requesting an accommodation" from JP Morgan, which was "not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *See Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046–47 (6th Cir. 1998).

JP Morgan further maintains that Gamble never requested an accommodation, and the only evidence that Gamble provides to the contrary are the two letters written by his attorney that were allegedly sent to JP Morgan in March and June 2013. These letters request that the company "engage in the interactive process to assess what reasonable accommodations can be made for Mr. Gamble's return to work." But these letters are unauthenticated, unverified, and were produced by Gamble only after JP Morgan moved for summary judgment. They are an attachment to his Response to the Defendant's Statement of Undisputed Facts. JP Morgan therefore objected to Gamble's introduction of this evidence under Rule 56 of the Federal Rules of Civil Procedure, and the district court sustained that objection under Rules 26 and 37 of those Rules.

Although Gamble made passing references to these letters in his briefs, he did not specify the court's evidentiary ruling as an issue for appeal, nor did he mention or challenge the court's

No. 16-6488, *Gamble v. JP Morgan et al.*

ruling at any point.  Gamble has therefore waived any challenge to the court's exclusion of these letters.  *See Harris v. City of St. Clairsville*, 330 F. App'x 68, 74–75 (6th Cir. 2008) (holding that the plaintiff waived a challenge to the district court's evidentiary ruling where he made only a "general statement that the district court erred by striking the remainder of the exhibits" and did not "cite to the record or in any way show that the district court erred");  *Geboy v. Brigano*, 489 F.3d 752, 766–67 (6th Cir. 2007) (holding that an appellant waived issues on appeal when he  "fail[ed] to advance any arguments bearing  upon these issues"); *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999))  Gamble presents no other evidence that he requested an accommodation from JP Morgan at any time.  He therefore failed to meet his "initial burden of requesting an accommodation" from JP Morgan.  *See Gantt*, 143 F.3d at 1046–47.  The district court therefore did not err in granting summary judgement to JP Morgan on Gamble's failure-to-accommodate claim.

## C.    ADEA Claim

Gamble next appeals the district court's holding that his termination did not violate the ADEA.   The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1). Because Gamble presented no direct evidence of age discrimination, his claim "embraces the same *McDonnell Douglas* burden-shifting regime" utilized in the context of the ADA analysis above. *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 305 (6th Cir. 2016).  To establish a prima facie case of age discrimination, Gamble was therefore required to "demonstrate that '(1) he or

13

No. 16-6488, *Gamble v. JP Morgan et al.*

she was a member of a protected age class (i.e., at least forty years old); (2) he or she suffered an adverse employment action; (3) he or she was qualified for the job or promotion; and (4) the employer gave the job to a younger employee.'" *See Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014) (quoting *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 529 (6th Cir. 2007)).

Gamble easily meets the first two prongs of this prima facie test because he was over 40 years of age when he suffered the adverse employment action of being terminated. Where Gamble's case falters, however, is at the third prong of the test. As in the context of Gamble's ADA claim, the district court held that Gamble was not qualified for the purpose of his ADEA claim because he was physically incapable of working. On appeal, Gamble does not address the court's holding that he was not qualified for his job. He instead addresses only the fourth prong of the test, arguing that he had established a prima facie case of age discrimination because he was replaced by a younger employee.

Because the district court granted summary judgment to JP Morgan solely on the basis that Gamble failed to establish that he was qualified for his job, Gamble has presumptively waived any challenge to the court's ADEA decision. *See Kevelighan v. Orlans Assocs., P.C.*, 498 F. App'x 469, 475 (6th Cir. 2012) (holding that an appellant's failure to address the specific basis for the district court's grant of summary judgment results in "a waiver of any challenge to those . . . grounds, and requires us to affirm the District Court's ruling"); *White Oak Prop. Dev., LLC v. Washington Twp.*, 606 F.3d 842, 854 (6th Cir. 2010) (holding that an appellant's failure to address the district court's alternative, independent basis for dismissal resulted in a waiver of that issue on appeal).

No. 16-6488, *Gamble v. JP Morgan et al.*

But even if Gamble had not waived his right to challenge the district court's decision on his ADEA claim, we would not reverse the court's grant of summary judgment to JP Morgan because the court correctly held that Gamble was unable to establish that he was a qualified employee, as required by the third prong of the prima facie test for age discrimination.  He would have had to show that he was qualified by presenting credible evidence that he "'continued to possess the objective qualifications [he] held when [he] was hired'" or that his "qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field."  *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (quoting *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991); *see also Hile v. Pepsi-Cola Gen. Bottlers, Inc.*, 108 F.3d 1377 (Table),  1997 WL 112404 at *4, *6 (6th Cir. 1997) (holding that an employee who was physically incapable of performing the essential functions of his job could not make out a prima facie case for age discrimination under the ADEA).

For the same reasons that Gamble is not "otherwise qualified" for the purpose of establishing a prima facie case for disability discrimination under the ADA, he is not "otherwise qualified" for the purpose of establishing a prima facie case under the ADEA.  The record shows that Gamble was completely disabled at the time of his termination and that he is currently unable to perform the essential functions of his job.  So even if Gamble had not waived this issue on appeal, his ADEA claim would have failed on the merits.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

15